IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>JOSEPH G. TRUTWEIN,<br><br>　　　　　　　　　　Debtor. | Chapter 7<br>Case No. 05-13635<br>Adv. No. 05-0896 |
| CATHY BLAKE,<br>　　　　　　　Plaintiff,<br>vs.<br>JOSEPH G. TRUTWEIN,<br>　　　　　　　Defendant. | MEMORANDUM DECISION DENYING MOTION TO REOPEN ADVERSARY PROCEEDING NO. 05-896 |

**I. INTRODUCTION**

This matter comes before the Court on a "Motion to Reopen Adversary Proceeding"("Motion") filed by Cathy Blake, the Plaintiff herein, on January 28, 2007. Joseph G. Trutwein, the Debtor and Defendant herein, filed an "Objection to Plaintiff's Motion to Reopen Adversary Proceeding" ("Objection") on March 1, 2007. The Plaintiff filed a "Memorandum in Support of Motion to Reopen Adversary Proceeding" ("Reply") on March 2, 2007, and the Court conducted a hearing in the matter on March 6, 2007. At the conclusion of the hearing, the Court took the matter under advisement.

In this Memorandum Decision, the Court has set forth its findings of fact and

1

Case 2:05-ap-00896-SSC    Doc 24    Filed 04/02/07    Entered 04/02/07 14:36:20    Desc
Main Document    Page 1 of 11

conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2007).

## II. FACTUAL BACKGROUND

The Debtor filed his Chapter 7 bankruptcy petition on July 28, 2005. His Section 341 meeting of creditors took place on September 9, 2005, allowing the Plaintiff until November 8, 2005 to file the requisite complaints relating to the discharge of certain debts. On November 6, 2005, two days prior to the bar date, the Plaintiff, acting through counsel, filed her Complaint pursuant to 11 U.S.C. § 523(a)(15), requesting a determination that an obligation owed to the Plaintiff by the Debtor be deemed nondischargeable. On November 22, 2005, the Plaintiff requested a summons, which was issued by the Clerk's Office on November 23, 2005. On December 7, 2005, the Plaintiff requested a Replacement, or Alias, Summons.[1] This Alias Summons was issued on December 8, 2005. Also on that date, the Plaintiff filed an Amended Complaint.

In a letter dated December 13, 2005, the Debtor's counsel advised the Plaintiff's counsel that the Debtor did not oppose the relief requested by the Plaintiff, provided that the Plaintiff did not seek attorneys' fees and costs or other unidentified relief.[2] See Exhibit 1 to Plaintiff's Reply.[3] Specifically, the Debtor objected to the portion of the wherefore clause of the Complaint, seeking "further relief as the court deems just and equitable." Id. The letter explicitly requested notice in the event that the Plaintiff decided to pursue any additional relief, so that the

---

[1] A replacement, or alias, summons must be issued if a plaintiff fails to serve the original summons in the ten-day period allotted by Federal Rule of Bankruptcy Procedure 7004(e).

[2] It is unclear to the Court whether the Defendant's counsel wrote in response to the original Complaint, or to the Amended Complaint, filed four days prior to the date of the letter.

[3] See Dkt. Entry No. 22.

2

Debtor could file an answer.  Id.

Neither the original Complaint nor the Amended Complaint was ever modified to address the concern of the Debtor's counsel before a default judgment could be entered against the Debtor with the Debtor's consent.  Rather, on January 23, 2006, the Plaintiff filed her "Application for Entry of Default and Default Judgment" ("Application").[4]  This Application was improperly drafted for a number of reasons.  For example, it requested the Clerk's Office enter a default judgment under Federal Rule of Civil Procedure 55(b)(2).  Rule 55, incorporated by Federal Rule of Bankruptcy Procedure 7055, sets forth the two-step process a party must follow to obtain a default judgment where the relief requires the Court to review the facts and law, and the judgment is not for a sum certain.  Under Rule 55(a), the party seeking default judgment must present an affidavit or make some other showing that the opposing party has not appeared, at which point the Clerk's Office places an Entry of Default on the docket.  Rule 55(b)(2) then provides that "the party entitled to judgment by default shall apply to the court therefor."  Because of this Rule, a separate document containing the judgment itself must be submitted to the Court.  Such a judgment may not be entered by the Clerk.  A separate judgment was never submitted to, or signed by, the Court.

A "Deficiency Memo" regarding the Application was mailed to the Plaintiff on January 25, 2006.[5]  The Deficiency Memo stated that it was mailed in regard to an "Application for Entry of Default" and stated that the Clerk's Office could not enter default because no affidavit of service of the Summons and Amended Complaint was on file.   The Deficiency Memo made no mention of a default judgment and clearly stated the requirements for an "entry of default" only.  An Affidavit of Service of the Summons and Amended Complaint was filed on January 31, 2006, curing the deficiency.

---

[4] Dkt. Entry No. 7.

[5] The Deficiency Memo may be found at Dkt. Entry No. 8; the Bankruptcy Noticing Center's Certificate of Service thereof appears at Dkt. Entry No. 9.

3

On February 1, 2006, the Clerk's Office entered default against the Debtor and served a copy of the "Clerk's Entry of Default" on the Plaintiff's counsel, the Plaintiff, and the Debtor.[6] The Entry of Default was never mailed to Debtor's counsel, who had declined to appear in the case in order to facilitate the default process. It was the responsibility of Plaintiff's counsel to mail the Entry of Default to the Debtor's counsel, particularly when portions of the Complaint or Amended Complaint to which the Debtor's counsel and the Debtor had objected remained viable.

Ultimately, however, this omission had no immediate impact on the Debtor, because the Plaintiff took no action in the adversary for seven and one-half months. Finally, because of a failure to enter a default judgment or take other action in the adversary, the Court issued, on September 14, 2006, an "Order Re: Potential Dismissal of Adversary," which was mailed to the Plaintiff's counsel.[7] Such an Order should have alerted Plaintiff's counsel to check the docket to ensure that all required action had been taken, lest the adversary proceeding be dismissed before the relief requested had been granted. Yet the Court received no response, and on October 20, 2006, after ample time for response or objection, the Court entered an Order Dismissing Adversary.[8] Despite the fact that said Order was mailed to the Plaintiff's counsel, he failed to act on it, or object to it, for a number of months. On January 28, 2007, he filed a Motion to Reopen the Adversary Proceeding, evidently because counsel representing the Debtor in the ongoing domestic relations proceedings in the Maricopa County Superior Court argued that the Plaintiff had failed to obtain a judgment in her bankruptcy adversary proceeding, so the

---

[6] Dkt. Entry No. 12. The entry of default itself appears at Dkt. Entry No. 11, and is clearly titled "Clerk's Entry of Default" (emphasis added).

[7] Dkt. Entry No. 13; related Certificate of Service at Dkt. Entry No. 14. Such Orders are routinely generated by the Court when no activity has occurred in a case for at least six months. "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." Link v. Wabash Railroad Company, 370 U.S. 626, 629-30, 82 S. Ct. 1386, 1388 (1962).

[8] Dkt. Entry No. 15; related Certificate of Service at Dkt. Entry No. 16.

4

Plaintiff's obligation has been discharged. See Motion to Reopen at 2.

### III. DISCUSSION

The Order Dismissing the Adversary entered by the Court on October 20, 2006, was a final order of the Court. It is well settled that the Court's inherent authority allows it "to clear [its] calendar of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." Link v. Wabash Railroad Company, 370 U.S. 626, 629-30, 82 S. Ct. 1386, 1388 (1962). Although it may cause hardship to a plaintiff, he or she must bear the consequences when such a dismissal results from counsel's "unexcused conduct." Id. at 633-34, 82 S. Ct. 1390 (emphasis added). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." Id. at 634, 82 S. Ct. 1390. This seemingly harsh rule is ameliorated by the availability of opportunities to set aside or modify judgments under certain circumstances. Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9024, provides that on motion within one year of the entry of the judgment, and just terms, a court may relieve a party from a final judgment or order for "mistake, inadvertence, surprise, or excusable neglect," or other reasons not relevant here. However, this power is not to be exercised lightly. Bankruptcy courts, as courts of equity, have power to reconsider, modify, or vacate their previous orders only so long as no intervening rights have become vested in reliance on orders. In re Lenox, 902 F.2d 737 (9th Cir. 1990). Additionally, where setting aside a dismissal order to reopen a case would be an exercise in futility, a court does not abuse its discretion by refusing to engage in such a "pointless" activity. In re Beezley, 994 F.2d 1433, 1434 (9th Cir. 1993).

In interpreting the phrase "excusable neglect," the United States Supreme Court held that determining whether neglect is "excusable" involves an equitable analysis that must take into account all relevant circumstances surrounding the party's omission. Pioneer Inv. Svcs.

5

Co. v. Brunswick Assoc. Ltd. P'nership, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993). In Pioneer, the plaintiff's counsel untimely filed the plaintiff's proof of claim and sought an order from the bankruptcy court allowing the late-filed claim. The order was denied. When the dispute reached the United States Supreme Court, the Court held that the late-filed claim should be allowed. It reasoned that the plaintiffs were bound by their attorney's conduct, and that the "excusable neglect" analysis must focus on the attorney's action. The Court gave "little weight" to counsel's assertion that he was experiencing personal difficulties and upheaval in his law practice at the time. Id. at 398, 113 S. Ct. 1499. Rather, it placed significance on the notice of the claims bar date provided by the bankruptcy court, which had been "outside the ordinary course in bankruptcy cases." The claims bar date had a "peculiar and inconspicuous placement... in a notice regarding a creditors' meeting." Id. at 398, 113 S. Ct. 1500. The Court found that the attorney's failure to apprehend the bar date on the "unusual" and "ambiguous" notice was excusable. Additionally, there was no prejudice to the debtor or to the interests of efficient judicial administration. Id., 113 S. Ct. 1499. Thus, the late-filed claim was allowed.

      In the decision of In re Estate of Butler's Tire & Battery Co., Inc. 592 F.2d 1028 (9th Cir. 1979), the Ninth Circuit analyzed somewhat similar issues. The plaintiff obtained a judgment against the defendant, but the defendant failed to apply for an extension of time in which to file an appeal within the ten days allowed by the rule governing such time limits. The bankruptcy court allowed the appeal to go forward, but the District and Ninth Circuit Courts reversed. The defendant's counsel argued that his neglect in failing to apply in a timely manner for an extension of time was excusable, because he did not know of the time limit until after it had expired. The Ninth Circuit, citing Harlan v. Graybar Electric Co., 442 F.2d 425 (9th Cir. 1971), held that "counsel's misreading of the rule indeed showed neglect, but it certainly does not make the neglect 'excusable.'" 592 F.2d at 1033. Additionally, "difficulty with office help, inadvertence, and the press of other business were insufficient to constitute excusable neglect." Id. (internal citations omitted); see also In re Sibson, 235 B.R. 672 (Bankr.M.D.Fla. 1999) and In

6

Case 2:05-ap-00896-SSC    Doc 24    Filed 04/02/07    Entered 04/02/07 14:36:20    Desc
Main Document    Page 6 of 11

re Bautista, 235 B.R. 678 (Bankr.M.D.Fla. 1999) (holding that cases dismissed due to a lawyer's failure to amend the complaint were not controlled by Pioneer, because the lawyer had received clear, unambiguous notice of his duty to act, unlike the Pioneer counsel, and because the lawyer's mere carelessness was not grounds for a finding of "excusable neglect" under Rule 60(b)).

In this case, the Plaintiff's counsel believed the Clerk's Entry of Default was actually the default judgment he had intended to obtain, and thus, he asserts the Dismissal Order should be set aside on the grounds of excusable neglect. However, at the March 6, 2007 hearing on the matter, Plaintiff's counsel presented no law in support of his position. When the Court examines all relevant circumstances surrounding the counsel's omission,[9] the Court's docket and the pleadings of Plaintiff's counsel establish a pattern of neglect from the outset of this case. As noted above, the Plaintiff's counsel failed to serve in a timely manner the initial Summons in the case; failed to cooperate with the Debtor's counsel's requests concerning consent to the entry of a default judgment; misread or failed to comply with Rule 55(b)(2); and failed to remedy his error despite multiple notices from the Court. The notices sent to Plaintiff's counsel regarding the "Clerk's Entry of Default" were clear and unambiguous. Unlike the document received by the counsel in Pioneer, the notices mailed to the counsel at bar did not contain notice of multiple events. Rather, each notice was clearly titled in bold at the top of the pages, and was mailed in regard to a single docket item or particular act. The Plaintiff's counsel is an experienced practitioner and has appeared before this Court for a number of years. At the March 6 hearing, he conceded that in other cases, he did not perceive the Clerk's Entry of Default as being the same as a default judgment.

Moreover, in the form submitted by the Plaintiff's counsel, he appended an order at the end of the form. As noted previously, in a request for entry of default and default judgment, the Plaintiff's counsel was required to submit a separate judgment for the relief

---

[9] See Pioneer, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498.

7

requested, which he did not do. Even his own form stated that he requested entry of a judgment pursuant to Rule 55(b)(2). That particular subsection requires that only the Court may grant such relief. Therefore, when the Plaintiff's counsel argued that he thought the Clerk's Entry of Default on the docket was the same as a default judgment, he should have realized that in his own request for relief, he was asking the Court to act. A review of the document that he submitted on the electronic docket would have clearly shown that the Court never took action on the improper order appended at the end of his Application. The Plaintiff's counsel never submitted an appropriate judgment which the Court could execute. Even when the Court notified the Plaintiff's counsel that the adversary was about to be dismissed because of inactivity, counsel did not request a hearing or take any other action. Thus, no "excusable" reason was given for his neglect in this case. The Supreme Court, Ninth Circuit, and other case precedent make clear that misreading a rule; failing to understand a clear, unambiguous notice of the sort ordinarily issued by the Bankruptcy Court; and mere carelessness do not constitute "excusable" neglect.

Moreover, an equitable analysis under Pioneer requires an examination of "the danger of prejudice to the debtor, [and] the length of the delay and its potential impact on judicial proceedings." 507 U.S. 380, 395, 113 S. Ct. 1489, 1498. The underlying Complaint in this matter alleges that the obligation owed to the Plaintiff by the Defendant was nondischargeable pursuant to 11 U.S.C. § 523(a)(15). The underlying nature of such a complaint is time sensitive, and the relief may be denied if not timely asserted. Relief must be requested within the time period specified by Federal Rule of Bankruptcy Procedure 4007(c).[10] Because of the time limitations, the dismissal of a time-barred action is effectively a dismissal with prejudice. Indeed, unless a court provides otherwise, all dismissals under Federal Rule of Civil

---

[10] Rule 4007(c) (West 2005) provides that a complaint filed pursuant to 11 U.S.C. § 523(c) "shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Section 523(c) (West 2005) provides that a debtor shall be discharged of debts of the kind specified in Subsections 523(a)(2), (4), (6), or (15), unless the creditor to whom the debt is owed receives a nondischargeability determination from the court after notice and a hearing.

8

Procedure Rule 41(b) other than for lack of jurisdiction, improper venue, or failure to join an indispensable party are with prejudice, even if not so stated. In re Marino, 213 B.R. 846, 851 (9th Cir. B.A.P. 1997), reversed on other grounds by In re Marino, 181 F.3d 1142 (9th Cir. 1999). Such actions are rarely reopened, because the discharged debtor is entitled to have all such matters adjudicated promptly. Other claims may be brought against a discharged debtor even if such claims require the debtor's case to be reopened; however, Congress has determined, by setting a bar date for the filing of such complaints, that a complaint under Section 523(a)(15) is not among them.

It is well settled that excusable neglect is no basis for a court to allow the late filing of a time-barred complaint. See In re Hill, 811 F.2d 484 (9th Cir. 1987); In re Santos, 112 B.R. 1001, 1008 (9th Cir. B.A.P. 1990); In re Ricketts, 71 B.R. 206, 208 (9th Cir. B.A.P. 1987). In the decision of In re Hill, a judgment creditor missed the filing deadline to bring an action determining the dischargeability of its debt under 11 U.S.C. § 523(a)(6). The Ninth Circuit found that excusable neglect had existed, but held that a court had no discretion to enlarge the time limit in which to file such a complaint. 811 F.2d at 485. Rule 4007(c) clearly provided that the complaint had to be filed in the time allowed; and if the time were to be enlarged, such extension has to be requested prior to the expiration of the original time period. Id. at 486. It noted that although the time limits might impose a hardship on certain creditors, such rules were necessary to further the prompt resolution of bankruptcy cases and did not unreasonably frustrate the creditors' substantive rights. Id. at 487. See also In re Santos, 112 B.R. at 1007, 1009 (noting that Rule 4007 protects a debtor's interest in certainty, finality, prompt administration, and the receipt of a fresh start).

In the case at bar, the Debtor received his bankruptcy discharge on November 21, 2005. Although the Plaintiff's adversary proceeding was still pending at that time, the Debtor had conditionally agreed to accept a default judgment against him. If the adversary proceeding had been prosecuted expeditiously, such a judgment could have been entered promptly after the

9

Clerk's Entry of Default on February 1, 2006. However, the adversary proceeding was not prosecuted expeditiously, or at all, and was dismissed approximately seven and one-half months later, after ample notice and opportunity for the Plaintiff to respond or object. Additionally, the default judgment being sought did not comport with the terms to which the Debtor had agreed. Once the adversary proceeding was dismissed and his discharge received, the Debtor had a right to rely on the finality of the orders entered in his case, and to begin the "fresh start" he was promised.

The Debtor was not the only one relying on the finality of the orders entered in his case. From the parties' assertions in the pleadings and at the March 6 hearing in this matter, it appears that property settlement matters were moving forward in the parties' divorce proceedings. Such matters would necessarily rely on orders entered by the Bankruptcy Court in the Debtor's case, and it is possible that the Debtor's rights have become vested in reliance on those orders. See In re Lenox, 902 F.2d 737 (9th Cir. 1990) (holding that bankruptcy courts may not vacate or modify final orders if intervening rights have become vested in reliance on said orders). Even if no such rights have become vested, the Court concludes that the neglect of Plaintiff's counsel was not "excusable," so as to warrant this Court vacating its Dismissal Order. Additionally, the time-barred nature of the underlying Complaint and the resulting prejudice to the Debtor militate against the Plaintiff's position. See Pioneer, 507 U.S. at 397-98, 113 S. Ct. at 1499 (noting that the lack of prejudice to the debtor or to the interests of judicial administration weighed in favor of vacating the offending order). Where a party cannot be accorded relief, such as in the case of a time-barred claim, a Court should not undertake an exercise in futility by reopening the case. In re Beezley, 994 F.2d 1433, 1434 (9th Cir. 1993).

### IV. CONCLUSION

Based upon the foregoing, the Plaintiff's Motion to Reopen Adversary Proceeding is denied. The Plaintiff has demonstrated no excusable neglect that would allow the

10

Court to vacate its Dismissal Order pursuant to Federal Rule of Civil Procedure 60(b). Moreover, the time-barred nature of the claim, and the public interest in efficient administration of judicial proceedings prevent the Court from entering the relief requested. The Court will execute a separate order incorporating this Decision.

DATED this 2nd day of April, 2007.

_____
HONORABLE SARAH SHARER CURLEY
United States Bankruptcy Judge

BNC to notice

11